# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

**FELICE VEACH,**

**Petitioner,**

**v.**                                                                    **Case No. 3:20cv6023-MCR/MAF**

**RICKY D. DIXON, Secretary,**
**Florida Department of Corrections,[1]**

**Respondent.**

_____/

## REPORT AND RECOMMENDATION

On December 23, 2020, Petitioner Felice Veach, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On March 11, 2021, Respondent filed an answer, with exhibits.  ECF No. 7.  Petitioner has filed a reply.  ECF No. 10.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  The

---

[1]The Clerk of Court shall substitute Ricky D. Dixon as Secretary of the Florida Department of Corrections. Ricky D. Dixon succeeded Mark S. Inch as Secretary for the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Procedural Background

By information filed April 28, 2016, in Escambia County Circuit Court case number 2016-CF-1704, the State of Florida charged Petitioner Felice John Veach with criminal conspiracy to commit witness tampering, in violation of sections 914.22 and 777.04(3), Florida Statutes, in connection with events that took place on or between March 29, 2016, and March 30, 2016.  Ex. B1 at 7.[2]  The charge arose from a recorded phone call between Veach and Lisa Harkins, while Veach was being held at the Escambia County Jail following his arrest in connection with an investigation involving victim C.R.  *See* Ex. B2 at 246; <u>Veach v. State</u>, 254 So. 3d 624, 626 (Fla. 1st DCA 2018).

Veach proceeded to a jury trial in December 2016.  Ex. B2.  Veach did not testify.  *Id*. at 319-20.  On December 21, 2016, the jury returned a verdict finding him guilty as charged.  *Id*. at 394-95; Ex. B1 at 133, 135.  The judge adjudicated him guilty and, on February 1, 2017, the judge sentenced him, as a habitual offender, to thirty (30) years in prison.  Ex. B1 at 174-78, 198-

---

[2] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 7.

204 (Judgment and Sentence); *see id*. at 140-79 (transcript of sentencing hearing).

Veach appealed his conviction and sentence to the First District Court of Appeal (First DCA), assigned case number 1D17-711, and raised two points.  Ex. B3 (Initial Brief).  The State filed an Answer Brief.  Ex. B4.  Veach filed a Reply Brief.  Ex. B5.  On July 9, 2018, the court affirmed the case and issued a written opinion.  Ex. B6.  Veach sought rehearing.  Ex. B7.  On August 30, 2018, the court issued an Opinion on Motion for Rehearing, in which the court granted Veach's motion for rehearing, withdrew its previous opinion, and substituted the new opinion in its place.  Ex. B8; Veach v. State, 254 So. 3d 624 (Fla. 1st DCA 2018).  The mandate issued September 30, 2018.  Ex. B9.

On September 11, 2018, Veach filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court, assigned case number SC18-1552.  Ex. B10.  In an opinion issued March 25, 2019, the Florida Supreme Court declined to accept jurisdiction and denied the petition for certiorari review.  Ex. C3; Veach v. State, No. SC18-1552, 2019 WL 1323945 (March 25, 2019).

On March 6, 2020, Veach filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising five claims of

ineffective assistance of counsel (IAC).  Ex. D1 at 6-24.  By order on May 22, 2020, the state post-conviction trial court summarily denied the Rule 3.850 motion.  Ex. D1 at 25-53.  Veach appealed to the First DCA, assigned case number 1D20-1878.  On November 12, 2020, the First DCA per curiam affirmed the case without a written opinion.  Ex. D3; <u>Veach v. State</u>, 306 So. 3d 69 (Fla. 1st DCA 2020) (table).  The mandate issued December 10, 2020. Ex. D4.

As indicated above, on December 23, 2020, Veach filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1. In his petition, Veach raises seven (7) grounds:

(1) **Trial Court Error**:  "The jury heard irrelevant and prejudicial information in the phone call that was the State's key piece of evidence, violating Veach's federal constitutional rights."  *Id*. at 6.

(2) **Trial Court Error**:  "The trial court precluded [Veach] from fully cross-examining the key witness at trial violating Veach's federal constitutional rights."  *Id*. at 8.

(3) **IAC**:  "Counsel's failure to seek judgment of acquittal constituted ineffective assistance violating Veach's federal constitutional rights."  *Id*. at 9.

(4) **IAC**:  "Counsel's failure to file a motion for new trial constituted ineffective assistance violating Veach's federal constitutional rights."  *Id*. at 11.

(5) **IAC**:  "Counsel's failure to object on hearsay grounds concerning the co-defendant pleading the Fifth constituted ineffective assistance violating Veach's U.S. Constitutional rights."  *Id*. at 22.

(6)  **IAC**:  "Counsel's failure to request the lesser included offense of witness harassment constituted ineffective assistance violating Veach's U.S. Constitutional rights."  *Id*. at 26.

(7)  **IAC**:  "The cumulative effect of counsel's ineffectiveness warrants relief, [and] Veach asks this Court to review the grounds submitted in this petition for cumulative error that violated his U.S. Constitutional rights."  *Id*. at 30.

On March 11, 2021, Respondent filed an answer to the petition, with exhibits.

ECF No. 7.  Veach filed a reply.  ECF No. 10.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)). "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

### <u>Ground 1</u>:  Trial Court Error – Irrelevant and Prejudicial Information

In his first ground, Petitioner Veach asserts "[t]he jury heard irrelevant and prejudicial information in the phone call that was the State's key piece of evidence, violating Veach's federal constitutional rights." ECF No. 1 at 6. As an initial matter, as Respondent asserts, it does not appear that Veach exhausted this particular ground as a federal claim. *See* ECF No. 7 at 7-8.

In particular, although he raised a similar claim in the state courts, Veach did not fairly present any federal grounds to support the claim in the state trial or appellate courts. *See* Ex. B2 at 197-213 (trial transcript). Prior to the start of trial, defense counsel made an oral motion in limine to exclude

or redact an additional part of the recorded jail phone call between Veach and Harkins:

> MR. ROBERTS [defense counsel]:  The first one, Your Honor, pertains to the phone call in question.  The jail call was redacted. Ms. Andres gave me a copy of the redaction, and there are two additional redactions that I brought to her attention during jury selection on Monday.  One of those was the conversation between Mr. Veach and his then girlfriend Ms. Lisa Harkins, who is in the courtroom and is a witness in this case.

> THE COURT:  Okay.

> MR. ROBERTS:  They talked about a phone being missing and Ms. Lisa Harkins calling and reporting that phone missing.  That phone has no relevancy in this case at all.  Whether that phone was missing or not missing has nothing to do with whether Mr. Veach did or did not attempt to tamper with a witness in this case.

> THE COURT:  So it's a statement on this phone call – an additional statement on the phone call that your position is that need to be redacted because it's not relevant?

> MR. ROBERTS:  It's not relevant.  It was part of a phone call and a mention of the phone.

> THE COURT:  It specifically says what now?

> MR. ROBERTS:  It specifically states something along the lines that there's a phone that Ms. Lisa Harkins had and the phone was missing or for Ms. Lisa Harkins to report that phone missing. And that phone and its presence, or lack of presence, has nothing to do with whether there was tampering with [C.R.], who's a witness in the lewd and lascivious charge that is pending against Mr. Veach.

> THE COURT:  Okay.

. . . .

THE COURT:  Ms. Andres, what's the State's position?  I guess – y'all have agreed to all the other redactions?

MS. ANDRES [prosecutor]:  Yes, Your Honor.

THE COURT:  This is the last issue that we need to sort out?

MS. ANDRES:  Yes, Your Honor.

THE COURT:  Okay.  What's the State's position?

MS. ANDRES:  Your Honor, it's the State's position that the State will be introducing that portion of the phone call for two particular reasons.  Lisa Harkins is a codefendant in this case and, as Your Honor is well aware, the jurors – there's an instruction where the jurors are to place more caution upon a codefendant's testimony.  She is a person who will be identifying the defendant in this case.  That is the only portion within the call where they identify – the defendant actually identifies himself because he's referring to himself as Rocky Veach.  So that would go to corroborate Lisa Harkins' testimony that she was actually speaking to the defendant in this case.

The second reason that the State would seek to introduce that is to show – the conversation about the phone is that there is evidence of the underlying charge where [C.R.] is the listed victim.  She's the victim who is being tampered with, but there's evidence that on the phone of that particular crime.

So the State is anticipating that the Defense would be that the defendant wants [C.R.] taken to the State Attorney's Office to sign a sworn affidavit because the incident never occurred.  So here we have evidence that would rebut that, that there is other evidence of that crime.  So that would be the second purpose for the State to produce that portion of the call.  And that relates specifically to the phone and the phone being stolen.  That there was evidence – there was believed to be evidence on the phone

of the crime that [C.R.] is the victim of.

THE COURT:  Any follow-up?

MR. ROBERTS:  Your Honor, we're not here for the lewd and lascivious charge.  We're here – the only issue in front of this Court and this jury today is whether Mr. Veach did or did not tamper with a witness in an ongoing case.

And that phone call, whether there was images or lack thereof on that phone that was missing or not missing, is not relevant as to whether Mr. Veach did, in fact, or did not tamper with a witness in an ongoing criminal matter.  It just goes to propensity.

The prejudicial value of that comment is – I mean, far outweighs any probative value that the State is trying to get it in.

THE COURT:  So you believe that it's so overly prejudicial for a statement that says the codefendant had the phone?

MR. ROBERTS:  No.  For a statement that says the codefendant had the phone, report that phone stolen or the images on that phone.  This jury –

THE COURT:  That's not what y'all just told me the statement was, so I think I need to hear it.

Ex. B2 at 197-201. The judge listened to the recording of the phone call. *Id.*

at 206-10.  The following then transpired on the record:

MS. ANDRES:  What the State would like to highlight from that is the ID that's being used is Shawn Stewart.  There was an indication at the beginning of the call that it was not Shawn Stewart.  But again, we don't know who it is.

We do have Lisa Harkins, who is going to testify, to identify the defendant, but she is a codefendant.  He indicated that will

kill their charge, referring to the phone, and then he also said, my phone, Rocky Veach. And there's testimony that the defendant in this case goes by Rocky. So those are the reasons why the State wants to introduce that.

THE COURT: Okay. Any follow-up, Mr. Roberts?

MS. ANDRES: And that's why it's more probative than prejudicial.

MR. ROBERTS: Your Honor, the codefendant in this case can identify Mr. Veach by voice and the fact that she – he's the only one who places calls to her.

This case is not about whether there was a phone call made between Mr. Veach and Ms. Harkins. That's not what – what our defense posture is. The identity of the person on that phone call is not – obviously the State has to, you know, identify that Mr. Veach is the person. But that's not a – that has never been a point of contention in this case as long as Ms. Andres and I have been discussing this case, which has been for months now.

Ms. Harkins is his ex-girlfriend. She can identify him and say, yes, that was Veach talking to me without the mentioning of the phone, and I think that would be sufficient.

But for the jury to hear that there was information on that tape that Mr. Veach was trying – that was stolen or Mr. Veach was trying to get reported stolen, it's highly prejudicial. . . .

But the phone call, Your Honor, I don't think it's probative at all. Your Honor can rule how you see fit, but that's my position.

*Id*. at 210-12. The judge denied the defense motion:

THE COURT: Okay. I heard arguments from counsel as well as listening to the jail phone call recording. It's the Court's position that I am going to deny the Defense motion in limine. I do find

> that the information they were seeking to redact is relevant to the charge before the jury and its probative value outweighs any undue prejudice, so I will allow the phone call.

*Id*. at 213.   As played during the trial, "[t]he seventeen-minute phone conversation was redacted to seven minutes." Veach, 254 So. 3d at 626.

Because Veach thus did not alert the state courts to the federal ground he now asserts, this ground was not fairly presented as a federal claim and is unexhausted.  *See* Baldwin v. Reese, 541 U.S. 27, 32 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so"); Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457-58 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."); *see also* O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Picard v. Connor, 404 U.S. 270, 278 (1971).   It is procedurally defaulted because he cannot obtain another direct appeal.  *See* O'Sullivan, 526 U.S. at 845.  Veach has not alleged or show cause for the default and actual prejudice, nor has he alleged or shown actual innocence or a fundamental miscarriage of justice.  *See id*. at 848-49; *see, e.g.*,

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (explaining cause and prejudice, and correction of fundamental miscarriage of justice); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of just exception is applicable.").

Even assuming Veach did exhaust this ground, it does not warrant habeas relief.  Veach essentially raises a claim of state law error, specifically a state trial court evidentiary ruling.   *See* Veach, 254 So. 3d at 627-28. "[F]ederal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); *see* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).  "Indeed, the general rule is that a federal court will not review a trial court's actions with

respect to the admission of evidence." <u>Shaw v. Boney</u>, 695 F.2d 528, 530 (11th Cir. 1983). "A state evidentiary violation in and of itself does not support habeas corpus relief" and "[b]efore such relief may be granted, the violation must rise to the level of a denial of 'fundamental fairness.'" *Id.*; *see* <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We review state court evidentiary rulings on a petition for habeas corpus to determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' . . . Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a 'crucial, critical, highly significant factor' in the [defendant's] conviction." (citations omitted)).

Further, a review of the record reflects that admission of the challenged evidence in this case does not appear erroneous under Florida state law. As the First DCA held, the contested portion of the phone conversation was relevant to the State's case, to establish the identity of Veach on the recorded call:

> Appellant placed the call to Harkins from another inmate's account, and the State offered the call because Appellant identified himself in the contested portion of the call, thus making the evidence relevant. While arguing the motion in limine, Appellant asserted that "obviously the State has to, you know, identify that [Appellant] is the person [on the phone]." Appellant argues, alternatively, that even if the contested portion was relevant, any probative value was outweighed by the unfair

prejudicial effect.  Appellant asserts that the phone conversation was unduly prejudicial, because it let the jurors speculate about the charge underlying Appellant's tampering charge.

> "[T]he court's discretion to exclude evidence under Rule 403 is narrowly circumscribed.  'Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.'  The balance under the Rule, therefore, should be struck in favor of admissibility." <u>State v. Gerry</u>, 855 So. 2d 157, 163 (Fla. 5th DCA 2003) (quoting <u>United States v. Norton</u>, 867 F.2d 1354, 1361 (11th Cir. 1989)) (citations omitted).  Here, the probative value of the evidence was not outweighed by unfair prejudicial effect.  Jurors had no reason to speculate regarding underlying facts relating to a cell phone, and further redaction would have improperly prevented the State from presenting evidence establishing Appellant's identity.

<u>Veach</u>, 254 So. 3d at 628.

Petitioner Veach has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1)-(2).  Thus, if considered on the merits, this ground should be denied.

### <u>Ground 2</u>:  Trial Court Error – Cross-Examination of Harkins

In his second ground, Veach asserts that "[t]he trial court precluded [Veach] from fully cross-examining the key witness at trial violating Veach's federal constitutional rights."  ECF No. 1 at 8.  In particular, Veach asserts

the trial court him "his right to confront Lisa Harkins, the pivotal state witness against him." *Id*. at 17.

Again, as an initial matter and as with Ground 1, it does not appear that Veach exhausted this ground as a federal claim. At no point in the state trial court did Veach cite to any federal authority in support of his argument in response to the prosecutor's objection. In particular, during the trial, the prosecutor objected during defense counsel's cross-examination of Harkins:

CROSS-EXAMINATION

BY MR. ROBERTS:

Q. Good morning, Ms. Harkins. How are you doing?

A. Hi.

Q. When you talked to Rocky – Felice – that day, your intention was not to break a law, correct?

MS. ANDRES [prosecutor]: Objection.

THE COURT: Counsel Approach.

   (At the bench:

THE COURT: State your objection.

MS. ANDRES: My same objection that she is not on trial and her intent is not what the jury needs to make a determination about. There was nothing within the State's case that opened the door to this testimony.

THE COURT: The only thing – because I made some notes because of the issue that was brought before the Court before, and there was testimony that she called Leonia Owens after the jail phone call, and that was it that I made note of. There was nothing elicited from the State's questions. I mean, I think your objection is what you stated before as well as it being outside the scope of your direct examination, if I understood you correct.

MS. ANDRES: Yes, Judge.

THE COURT: Mr. Roberts?

MR. ROBERTS: I'm asking that question to get the jury to understand that. Because one thing that you asked me to show is there was a conspiracy to commit tampering.

THE COURT: I understand.

MR. ROBERTS: When she – when she received that call and when she was listening to Mr. Veach, her – she was not conspiring. She was, instead, trying to get [C.R.] to do right. That's the line of questioning that I am taking. And when she received that call and Veach was telling her, go do A, B, C, did she understand that, oh, I'm conspiring to tamper with a witness? Or was that intention to get this witness to go do what she considered to have been the right thing? That's the line of questioning.

THE COURT: Your argument before was that you don't have to prove her intent, you just have to prove Mr. Veach's intent, correct.

MS. ANDRES: Correct.

THE COURT: I'm looking up the instruction.

MR. ROBERTS: I understand the State don't have to prove any act in furtherance, but the State has already made – brought out testimony about a phone call being placed, which is obviously an

act of utterance.  That was not necessary.  There should not have been that testimony – in that case, there should not be any testimony about a call being made to Leonia because that's not necessary for the State to prove.  But if the Sate proves that, if the State has evidence to show that, I think I should be able, hey, when you received that call and Veach was telling you to go do A, B, C, did you think – was it your intention to conspire with him to get [C.R.] to do something, to tamper with [C.R.]?  Or was it to contact [C.R.] to ask her to do the right thing?  That's the line of my questioning.

THE COURT:  I mean, have you talked to Mr. Tatum about this?

MS. ANDRES:   Your Honor, she's going to invoke her Fifth Amendment.

THE COURT:  Because that's starting to get into her specific charges because the State would have it prove intent on her case, and that's my concern.  If she invokes her Fifth Amendment Right –

MR. ROBERTS:  She can invoke it.  That's fine.  She can invoke it.  But I should be able to ask the question so Your Honor can rule as you see fit.  She can invoke her right.

MS. ANDRES:  It's the State's position we don't have to prove her intent.

THE COURT:  I am not going to allow that line of questioning, Mr. Roberts.  I'll grant the State's objection.

(Bench conference concluded)

Ex. B2 at 289-93.  The cross-examination continued, the prosecutor raised

another objection, and defense counsel withdrew his question:

Q.  (By Mr. Roberts) Felice's phone was not working, correct?

A.  Yes.

Q.  You never made contact with [C.R.], did you?

A. No.

Q.  When you talked to – you talked to Ms. Leonia?

A.  Yes.

Q.  And you were trying to get [C.R.] to – you were trying to get [C.R.] to get some stuff from Veach's home?

MS. ANDRES:  Objection.

THE COURT:  Counsel approach.

        (At the bench:

THE COURT:  Ms. Andres.

MS. ANDRES:  This line of questioning goes to her intent, which is in violation of what this Court has just ruled.

MR. ROBERTS:  Your Honor, I am trying to impeach her.  That's what my intent is, okay.  She made a statement to Ms. Berry that I anticipate is going to be different than what she stated earlier. She can say no or yes.  My –

THE COURT:  I mean, there was no testimony from Investigator Berry about any statements made, so how can you impeach her with that?

MS. ANDRES:  There's no testimony about any statements that she made.  That would be a contradiction.

THE COURT:    Right.    There  was  no  testimony.    I  mean, Investigator – she hasn't testified.  I'm sorry.

MR. ROBERTS:  Actually –

THE COURT:  You can't go there anyway because there's been no testimony by that witness.

MR. ROBERTS:  I'll withdraw that question right now to Ms. Berry.  Let me see how Ms. Berry testifies.

THE COURT:  That's what my previous ruling was, Mr. Roberts.

MR. ROBERTS:  That was my mistake, your Honor.  I'll wait until Ms. Berry testifies and I'll choose to ask or not ask that question.

THE COURT:  We'll probably need to talk about it.  We'll see what her testimony is from the State's case before we elicit anything on cross tha will be in violation of the Court's ruling.

(Bench conference concluded)

*Id*. at 293-94.  The cross-examination then continued and concluded:

Q.  (By Mr. Roberts) Ms. Andres asked you earlier that the State has not made you an offer in this case?

A.  No.

Q.  But you hope being here today will help you when that time comes, correct?

A.  I hope so.

Q.  You don't really like Mr. Veach, do you?

A.  No.

Q.  Because you blame him for getting you in this mess, correct?

A.  No.

Q.  You don't blame him for getting you in this mess?

A.  Yes.  But that's –

Q.  Even though you said some things yourself in that phone call, correct?

A.  Uh-huh.

MS. ANDRES:  Is that a "yes"?

THE WITNESS:  Yes.

THE COURT:  You just need to answer "yes" or "no" for the record.  We've got a court reporter right in front of you, but we need to have an accurate record.

Q.  (By Mr. Roberts)  Mr. Veach was locked up at the time of that phone call?

A.  Yes.

Q.  He didn't dial the phone number you dialed to Ms. Owens, did he?

A.  No.

Q.  He didn't ask you to say – he didn't say the things that you said to Ms. Owens, did he?  When you spoke with Leonia Owens, Mr. Veach didn't say those words for you, you said them yourself freely, correct?

A.  Yes.

Q.  Ma'am, how old are you?

A.  Forty.

Q.  Do you blame him for getting you in this mess?

A.  Yes.

MR. ROBERTS:  No further questions, ma'am.

*Id*. at 295-96.

Because Veach thus did not alert the state trial court to the federal ground he now asserts, as with Ground 1, *supra*, this ground was not fairly or properly presented as a federal claim and is unexhausted.   It is procedurally defaulted because Veach cannot obtain another direct appeal. Veach has not alleged or show cause for the default and actual prejudice, nor has he alleged or shown actual innocence or a fundamental miscarriage of justice.

Even assuming Veach did exhaust this ground, it does not warrant habeas relief.   Although Veach did not cite to any federal authority in the state trial court, his second point in his direct appeal, asserting the trial court precluded him from fully cross-examining Harkins, references federal authority, including the Confrontation Clause of the Sixth Amendment.   Ex. B3 at 16-21.   The First DCA rejected his argument:

> Appellant also argues that the trial court violated his Sixth Amendment right to confrontation by not allowing him to ask Harkins on cross-examination whether she intended to commit a crime when Appellant called her from jail.  Harkins' intent was not relevant to the charge against Appellant and was not within the scope of direct examination.  When a line of questioning posed

to a criminal companion is "clearly a defensive matter well beyond the scope of direct examination," the trial court does not err in curtailing the line of questioning.  Steinhorst v. State, 412 So. 2d 332, 337-39 (Fla. 1982).  The trial court did not err in barring Appellant's line of questioning, and even if it occurred, the error was harmless, as the prosecutor stated that, based on a conversation with Harkins' counsel, Harkins would have asserted her right against self-incrimination under the Fifth Amendment, if the questioning had been allowed.  Thus, there is no reasonable probability that exclusion of this question contributed to the verdict.  State v. DiGuilio, 491 So. 2d 1129 (Fla. 1986).

Veach, 254 So. 3d at 628.

Pursuant to the Confrontation Clause of the Sixth Amendment to the U.S. Constitution, a defendant has the right to cross-examine the prosecution's witnesses.  *See, e.g.*, Delaware v. Van Arsdall, 275 U.S. 673, 678 (1986). The U.S. Supreme Court has "held that this bedrock procedural guarantee applies to both federal and state prosecutions," through the Fourteenth Amendment. Crawford v. Washington, 541 U.S. 36, 42 (2004); *see* Pointer v. Texas, 380 U.S. 400, 406 (1965).  Nevertheless, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. 284, 295 (1973).  "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to

whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). Indeed, the U.S. Supreme Court has explained that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679

To show a Confrontation Clause violation, a defendant must prove he was "prohibited from engaging in otherwise appropriate cross-examination" and "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." Van Arsdall, 475 U.S. at 680. "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1371 (11th Cir. 1994); *see, e.g.*, United States v. Van Dorn, 925 F.2d 1331, 1335 (11th Cir. 1991); United States v. Summers, 598 F.2d 450, 461 (5th Cir. 1979).

In this case, Veach was not improperly limited in cross-examining Harkins because, as the state courts indicated, Harkins' intent was not relevant to his trial.  Nothing indicates that the cross-examination was not constitutionally adequate or that the trial judge abused his discretion in limiting defense counsel's cross-examination.  *See, e.g.*, United States v. Barrington, 648 F.3d 1178, 1188-89 (11th Cir. 2011) (holding that trial court did not abuse its discretion in preventing cross-examination of co-defendant on pending state burglary charge); United States v. Williams, 526 F.3d 1312, 1319 (11th Cir. 2008) (holding that trial court did not abuse its discretion in limiting cross-examination of "government's star witness" who "was also a participant in the crime" where, among other things, "a reasonable jury would not have received a different impression about his credibility" if the trial court had permitted further questioning); United States v. Beale, 921 F.2d 1412, 1424 (11th Cir. 1991) (holding that trial court did not abuse its discretion in limiting cross-examination of co-conspirator who testified for prosecution where, among other things, trial court explained that "the underlying facts of the arrests were not relevant and [co-conspirator witness] retained his Fifth Amendment right to refuse to answer questions concerning these arrests").

From the testimony defense counsel elicited from Harkins, the jury could gauge her credibility, motive, and bias, as among other things, she

testified she was also charged, her case was still pending, and she did not like Veach.  Defense counsel was able to argue its theory of the case in closing, that Veach was just trying to get the victim to tell the truth.  Ex. B2 at 359-60 (defense counsel:  "The contents of the jail call is what it is.  But the contents of that jail call can be understood and interpreted not just to tamper, Mr. Veach was trying to get [C.R.] to do the right thing in this case.  He was trying to get Lisa Harkins to take her down to the State Attorney's Office, go tell them nothing happened because that is, in fact, the right thing."); 361 (defense counsel:  "But could that jail call be reasonably interpreted also to mean, oh, they were trying to get her to do the right thing?  And guess what?  What other way to say that?  Hey, take her down there and make sure she goes and tells these people nothing happened.").

Moreover, as also indicated in the analysis of Ground 5, *infra*, the post-conviction court noted that "the appellate court found that, based on the prosecutor's conversation with Harkins' counsel, Harkins would have asserted her right against self-incrimination."  Ex. D1 at 28; *see* Veach, 254 So. 3d at 628.  Thus, even if the trial court had allowed defense counsel to pursue the inquiry, Harkins would not have answered the question.

Petitioner Veach has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  If considered on the merits, this ground should be denied.

## <u>Ground 3</u>:  IAC – No JOA Motion

In his third ground, Veach asserts "[c]ounsel's failure to seek judgment of acquittal constituted ineffective assistance violating Veach's federal constitutional rights."  ECF No. 1 at 9.  Respondent asserts this claim is, at least arguably, unexhausted because, although Veach raised a similar claim in the first ground of his Rule 3.850 motion, *see* Ex. D1 at 10-14, Veach did not cite to any provisions of or amendments to the U.S. Constitution in support of that ground.  ECF No. 7 at 12.  As Respondent also indicates, however, the state post-conviction trial court considered the claim as one pursuant to <u>Strickland</u>, Ex. D1 at 25, and denied it, making the following findings:

> Defendant claims trial counsel was ineffective for filing to move for judgment of acquittal.  He asserts the State was required to prove that two or more individuals both intentionally engaged in a criminal activity, but instead the State presented a watered down version of its burden of proof, presented vague proof that Defendant committed a crime, and presented no direct evidence that his co-defendant Lisa Harkins intended to or committed a crime.  Defendant further asserts that had counsel presented precise arguments and stated with specificity how the State failed to prove the requisite elements, a judgment of acquittal would have been granted.

During opening statements at trial, trial counsel conceded that Defendant made a call from jail to his girlfriend Lisa Harkins. (Exhibit A, pp. 253-254. [Ex. B2 at 253-54.])  Counsel stated that Harkins' intent in calling the victim's mother . . . was in question. (Exhibit A, p. 256.  [Ex. B2 at 256.])  The State objected on the basis that it did not intend to elicit specific testimony as to Harkins' intent, and Harkins' intent [was] not at issue.  (Exhibit A, pp. 256-259. [Ex. B2 at 256-59.])  The trial court ruled that the testimony to elicit Harkins' intent would not be admissible at that point.  (Exhibit A, p. 261.  [Ex. B2 at 259, 261]).

Harkins testified as to the phone call she had with Defendant, and the conversation was played for the jury.  (Exhibit A, pp. 279-286.   [Ex. B2 at 279-86.])   In the conversation, Defendant told Harkins to get hold of the victim and talk to her and get the victim to file a sworn affidavit saying that nothing happened.  (Exhibit A, pp. 284-285. [Ex. B2 at 284-86.])  Harkins stated that if the victim would not, she would tell them the victim did not go to school for all these years, and Defendant sated "we're going to tell a lot more stories."  (Exhibit A, p. 285.  [Ex. B2 at 285.])  Harkins indicated she would do as Defendant asked.  (Exhibit A, pp. 285-286.  [Ex. B2 at 285-86.])  Harkins testified that after talking to Defendant she called the victim's mother and spoke to her.  (Exhibit A, pp. 287-288.  [Ex. B2 at 287-88.])

On cross examination, trial counsel asked Harkins whether it was her intention not to break the law.  (Exhibit A, p. 290.  [Ex. B2 at 290.])  The State objected on the ground that Harkins' intent was not an issue for the jury.  (Exhibit A, p. 290.  [Ex. B2 at 290.])  The trial court ruled it would not allow questioning as to Harkins' intent and granted the State's objection.  (Exhibit A, pp. 292-293.  [Ex. B2 at 292-93.])

After the State rested, counsel informed the court he could not make a motion for judgment of acquittal in good faith.  (Exhibit A, p. 316.  [Ex. B2 at 316.])  In turn, the court found a prima facie case had been proven for the case to go forward to the jury. (Exhibit A, p. 317.  [Ex. B2 at 317.])

In order to prove conspiracy, the State must prove an agreement to accomplish a criminal offense and an intention to commit the offense. *See* Gonzalez v. State, 455 So. 2d 1131, 1132 (Fla. 2d DCA 1984).  The elements of conspiracy may be proven by circumstantial evidence. *Id*.  On appeal, it was found that Harkins' intent was not relevant to the charge against Defendant.  *See* 254 So. 3d at 628.  Based on the law and the sufficiency of the evidence presented at trial, there was no reasonable probability a motion for judgment of acquittal would have been granted based on the grounds asserted by Defendant.

Ex. D1 at 26-27.

On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  *See* Richter, 562 U.S. at 99.  A review of the state court record, and case law, supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

Assuming Veach properly presented and exhausted this ground as a federal claim, it lacks merit.  In particular, the State charged Veach with criminal conspiracy and, to prove that crime, the State had to show, beyond a reasonable doubt, that Veach intended the offense of tampering with the victim would be committed and, to carry out that intent, Veach agreed,

conspired, combined, or confederated with Lisa Harkins to cause tampering with the victim.  Ex. B2 at 379-80; *see* § 914.22, Fla. Stat. (2015).  The record supports the findings of the post-conviction court regarding the statements, testimony, and arguments made during the trial, as reflected by the citations to the state court record, Ex. B2, included in brackets in the quoted ruling, *supra*.  At the conclusion of the State's case, defense counsel stated on the record that he could not "in good faith, make a motion for a JOA at this time" and that he thought "the State has presented some evidence that a jury can consider and it is a violation of the law for [him] to ask this Court to take – for the Court to take notice on its own behalf."  Ex. B2 at 316.  The trial judge then stated, "And having heard the evidence and testimony presented by the State, I do find that a prima facie case has been proven for the case to go to the jury." Ex. B2 at 317.  Defense counsel cannot be ineffective for not raising a futile issue.  *See, e.g.*, Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."); Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986) ("[W]e cannot find ineffectiveness based on lack of objection or argument when counsel could reasonably have decided that such objection or argument would have been futile . . . .")..

Petitioner Veach has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1)-(2).  Thus, if considered on the merits, this ground should be denied.

### <u>Ground 4</u>:  IAC – No Motion for New Trial

In his fourth ground, Veach asserts that "[c]ounsel's failure to file a motion for new trial constituted ineffective assistance violating Veach's federal constitutional rights."  ECF No. 1 at 11.  Veach raised a similar claim as the second ground in his Rule 3.850 motion, Ex. D1 at 14-15, although, as pointed out by Respondent, ECF No. 7 at 13, Veach did not cite any federal constitutional grounds in support of the claim.  As also pointed out by Respondent, however, the state post-conviction trial court consider the claim as one under <u>Strickland</u>, Ex. D1 at 25, and denied it, making the following findings:

> Defendant claims counsel was ineffective for failing to move for a new trial on the same basis as the claim raised in Ground 1 and that the State failed to prove Defendant conspired with Harkins, who was a nonconspiring party.

> A new trial may be granted where the verdict is contrary to the weight of the evidence.  <u>Johnson v. State</u>, 247 So. 3d 689, 697 (Fla. 1st DCA 2018).  Counsel may be ineffective where there was a strong likelihood that a new trial would have been

granted.  *Id*.  In Defendant's case, there was ample evidence of a conspiracy between Defendant and Harkins, and there was no reasonable probability the trial court would have granted a new trial on the grounds asserted by Defendant.

Ex. D1 at 28.  On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99.  The record supports the state courts' determination.  *See* Wilson, 138 S. Ct. at 1192.

Similar to Ground 3, *supra*, assuming Veach properly presented and exhausted this ground as a federal claim, it lacks merit.  In particular, as explained in the analysis of Ground 3, the record supports the findings of the post-conviction court that "there was ample evidence of a conspiracy between Defendant and Harkins, and there was no reasonable probability the trial court would have granted a new trial on the grounds asserted by Defendant."  Ex. D1 at 28.  Defense counsel cannot be ineffective for not raising a futile issue.  *See, e.g*., Card, 911 F.2d at 1520; Maxwell, 490 So. 2d at 932.

Based on the foregoing, Veach has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Under the

double deferential review this Court applies to a <u>Strickland</u> claim evaluated pursuant to the § 2254(d)(1) standard, this ground should be denied.

## <u>Ground 5</u>:  IAC – Failure to Object to Hearsay

In his fifth ground, Veach asserts that "[c]ounsel's failure to object on hearsay grounds concerning the co-defendant pleading the Fifth constituted ineffective assistance violating Veach's U.S. Constitutional rights."  ECF No. 1 at 22.  As with Grounds 3 and 4, *supra*, Respondent points out that, although Veach raised a similar claim as the third ground in his Rule 3.850 motion, Ex. D1 at 15-17, Veach did not cite any federal constitutional grounds in support of his claim.  *See* ECF No. 7 at 13.  As with the other grounds, however, the state post-conviction court appears to have considered it pursuant to <u>Strickland</u>, Ex. D1 at 25, and denied it, making the following findings:

> Defendant claims counsel was ineffective for failing to object on hearsay grounds to the prosecutor informing the trial court that Harkins' lawyer told them she would plead the Fifth on testifying as to her intent.  Defendant alleges Harkins would have testified there was a videotaped recantation in the underlying case of the victim clarifying the misinformation that caused this case.

> During cross examination of Harkins by trial counsel, the State objected to her being questioned as to her intent.  (Exhibit A, p. 290.  [Ex. B2 at 290.])  The trial court asked if Harkins' attorney had been consulted, and the State stated Harkins was going to invoke her Fifth Amendment.  (Exhibit A, p. 292. [Ex. B2

at 292.])  The trial court granted the State's objection.  (Exhibit A, pp. 292-293.  [Ex. B2 at 292-93.])

The prosecutor's statement was not testimony.  Therefore, there was no reasonable probability that an objection on hearsay grounds would have been granted.

Ex. D1 at 28.  The post-conviction court noted that "the appellate court found that, based on the prosecutor's conversation with Harkins' counsel, Harkins would have asserted her right against self-incrimination."  *Id*.; *see* Veach, 254 So. 3d at 628.

On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  *See* Richter, 562 U.S. at 99.  The record supports the state courts' determination.  *See* Wilson, 138 S. Ct. at 1192.

Assuming Veach properly presented and exhausted this ground as a federal claim, it lacks merit.  In particular, the record supports the findings of the post-conviction court regarding the trial objection and ruling, as reflected by the citations to the state court record included in brackets in the quoted ruling, *supra*, and as quoted in full in the analysis of Ground 2, *supra*.  As the post-conviction court found, the prosecutor's statement was not hearsay and, therefore, an objection on hearsay grounds would not have been

sustained.  Defense counsel cannot be ineffective for not raising a futile issue.  *See, e.g.*, Card, 911 F.2d at 1520; Maxwell, 490 So. 2d at 932.

Based on the foregoing, Petitioner Veach has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Under the double deferential review this Court applies to a Strickland claim evaluated pursuant to the § 2254(d)(1) standard, this ground should be denied.

### Ground 6:  IAC – Failure to Request Lesser Included Offense

In his sixth ground, Veach asserts that "[c]ounsel's failure to request the lesser included offense of witness harassment constituted ineffective assistance violating Veach's U.S. Constitutional rights." ECF No. 1 at 26. Veach raised a similar claim as the fourth ground in his Rule 3.850 motion, Ex. D1 at 18, although, as pointed out by Respondent, ECF No. 7 at 14, and as with Grounds 3 through 5, *supra*, Veach did not cite any federal constitutional grounds in support of the claim, *see* Ex. D1 at 18.  As also pointed out by Respondent, however, the state post-conviction trial court consider the claim as one under Strickland, Ex. D1 at 25, and denied it, making the following findings:

Defendant claims counsel was ineffective for failing to request the lesser included offense of witness harassment, in violation of section 914.22(3), Florida Statutes.  He asserts the jury was therefore not provided a legitimate option of finding him guilty of the lesser offense.  This claim is without merit, as the possibility of a jury pardon cannot form the basis of prejudice.  *See* Sanders v. State, 946 So. 2d 953, 960 (Fla. 2006).

Ex. D1 at 29.  On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  *See* Richter, 562 U.S. at 99.  The record supports the state courts' determination.  *See* Wilson, 138 S. Ct. at 1192.

Again, assuming Veach properly presented and exhausted this ground as a federal claim, it lacks merit.  Nothing supports Veach's conclusory allegation that, if the lesser included offense of witness harassment had been included, the jury would have found him guilty of the lesser offense.  Under the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.

Based on the foregoing, Petitioner Veach has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Under the

double deferential review this Court applies to a <u>Strickland</u> claim evaluated pursuant to the § 2254(d)(1) standard, this ground should be denied.

### <u>Ground 7</u>:  IAC – Cumulative Error

In his seventh ground, Veach asserts the cumulative effect of defense counsel's alleged deficient performance prejudiced him.  ECF No. 1 at 30. Veach exhausted this ground by raising it as the fifth claim in his Rule 3.850 motion.  Ex. D1 at 19.

The state post-conviction trial court denied the claim, explaining "[b]ecause Defendant's individual claims of error fail, this claim of cumulative error fails as well."  Ex. D1 at 29.  On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  *See* <u>Richter</u>, 562 U.S. at 99.  The record supports the state courts' determination.  *See* <u>Wilson</u>, 138 S. Ct. at 1192.

Petitioner Veach has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Indeed, the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims. <u>Forrest v. Fla. Dep't of Corr.</u>, 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the

applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" and "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).  Moreover, as the state court explained, because each individual ground fails, this ground likewise fails and should be denied.  *See, e.g.*, Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative trial court error as "none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *accord, e.g.*, United States v. Chalker, 966 F.3d 1177, 1193-94 (11th Cir. 2020).

## Conclusion

Petitioner Felice Veach is not entitled to federal habeas relief.  The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue

or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.  The Clerk of Court shall substitute Ricky D. Dixon for Mark Inch

as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on January 31, 2022.

> S/  Martin A. Fitzpatrick
> **MARTIN A. FITZPATRICK**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**